```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
656 HERMITAGE CIRCLE, LLC,                                   :
                                    Plaintiff,               :
                                                             :    22 Civ. 571 (LGS)
                  -against-                                  :
                                                             :    OPINION AND ORDER
DAVID T. WALLACH, et al.,                                    :
                                    Defendants.              :
------------------------------------------------------------ X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff 656 Hermitage Circle, LLC brings this action against Defendants David T. Wallach and Maria T. Wallach for breach of contract. Defendants move for judgment on the pleadings. For the reasons below, the motion is granted.

I. **BACKGROUND**

The following facts are taken from the Complaint and assumed to be true for purposes of this motion, as well as from documents of which the Court can take judicial notice. *See Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021); *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021) (holding that "matters of which the court may take judicial notice" are "part of the non-movant's 'pleading'" even if they are not attached to, incorporated by reference in or integral to the complaint itself, and even if attached to the movant's pleading). The Court takes judicial notice of documents "not to prove the truth of their contents" but "only to determine what the documents stated." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (cleaned up); *accord Clark v. N.Y.C. Hous. Auth.*, 514 F. Supp. 3d 607, 611 n.3 (S.D.N.Y. 2021).

A. **Relevant Facts**

On or about October 24, 2017, non-party W-Cat, Inc. ("W-Cat") executed a promissory note (the "Note") in favor of non-party Sustainable Income, LLC ("Sustainable"). W-Cat agreed

to pay Sustainable $300,000 with 15% annual interest by October 18, 2018.  When the loan came due, W-Cat defaulted.  The Note was "secured by a First Deed of Trust ('Deed of Trust')" -- the "First Mortgage" -- "granted by [W-Cat] in favor of [Sustainable] on" a parcel of real property (the "Property"), "as well as the personal guarantee of" the Defendants (the "Guarantee"), executed the same day as the Note.  On or about December 16, 2021, Plaintiff purchased the Note from Sustainable, and all of Sustainable's rights in the Note -- but not in the First Mortgage -- were assigned to Plaintiff.  On January 10, 2022, Plaintiff demanded payment on the Note from Defendants as guarantors.  Defendants have not made payment.  On July 7, 2022, Plaintiff recorded a Release of Mortgage (the "Release") with the Luzerne County Clerk, which purports to release the First Mortgage without releasing any debt by W-Cat to Plaintiff.

B.     Additional Background

Two documents filed on January 11, 2022, with the Luzerne County (Pennsylvania) County Clerk of Records, Recorder of Deeds Division -- the authenticity of which Plaintiff does not dispute -- are informative about what took place between Plaintiff's acquisition of the Note and demand for payment from Defendants.  The first was a mortgage (the "Second Mortgage") by Plaintiff in favor of One More Mountain Top, LLC, ("OMMT") dated December 17, 2021, purporting to grant a second mortgage in the Property to secure a $300,000 loan from OMMT to Plaintiff.  The Second Mortgage states that the $300,000 "represents a principal reduction payment on the Purchase price by" OMMT for the Property, which Plaintiff "shall use to satisfy the first mortgage of [Sustainable,] and [OMMT] shall hold this Second Mortgage until such time that [OMMT] obtains title to the Mortgaged Property."  The second document was a satisfaction piece (the "Satisfaction Piece"), dated December 16, 2021, in which Sustainable "certifie[d] that the debt secured by" its First Mortgage made to W-Cat on the Property "has been

2

fully paid or otherwise discharged and that upon the recording hereof said Mortgage shall be and is hereby fully and forever satisfied and discharged." This lawsuit was filed ten days later, on January 21, 2022.

On June 3, 2022, Defendants moved for judgment on the pleadings on the grounds that the Satisfaction Piece, of which the Court could take judicial notice, established that the debt they guaranteed had been discharged. On June 14, 2022, a few days before Plaintiff's opposition to Defendants' motion was due, Sustainable, W-Cat and Plaintiff jointly petitioned the Court of Common Pleas of Luzerne County to strike the Satisfaction Piece, arguing that Sustainable had filed it in error despite Sustainable's having assigned its interest in the Note to Plaintiff prior to filing. The court granted the motion, reviving the Note and Sustainable's mortgage on the Property. On July 7, 2022, however, Plaintiff recorded the Release with the Luzerne County Clerk, making it part of the public record. The Release states that Sustainable assigned the First Mortgage to Plaintiff on July 5, 2022, that W-Cat then asked Plaintiff to release the First Mortgage, and that the First Mortgage is released without releasing any debt by W-Cat to Plaintiff.

## II.   STANDARD

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (cleaned up). A court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 716 (2d Cir. 2020). It is not enough for a complaint to allege facts that are consistent with liability; it must "nudge[]" claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Estate of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

Even though Defendants bear the burden of pleading and proving affirmative defenses, "[d]ismissal pursuant to an affirmative defense is appropriate when that defense appears on 'the face of the complaint,' or when the defense is based on 'matters of which the court may take judicial notice,'" such as "[m]atters of public record." *Sanders v. Sanders*, No. 20 Civ. 5621, 2021 WL 4392053, at *4 (S.D.N.Y. Sept. 24, 2021), *aff'd*, No. 22-99, 2022 WL 16984681 (2d Cir. Nov. 17, 2022) (citations omitted). *See generally Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86-87 (2d Cir. 2000) (affirming Rule 12(b)(6) dismissal on *res judicata* grounds, which is enumerated as an affirmative defense in Rule 8(c)(1)).

## III.   DISCUSSION

### A.   Choice of Law

New York's choice of law rules govern claims heard under the Court's diversity jurisdiction. *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989); *Hodnett v. Medalist*

4

*Partners Opportunity Master Fund II-A, L.P.*, No. 21 Civ. 38, 2022 WL 4072935, at *7 (S.D.N.Y. Sept. 2, 2022). "Under New York choice-of-law rules, the first step in any choice of law inquiry is to determine whether there is an actual conflict between the rules of the relevant jurisdictions." *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (internal quotation marks omitted). If such a conflict exists, the next step is to "apply New York choice-of-law rules to decide which jurisdiction's substantive law controls." *Id.* An actual conflict of law exists if the applicable law from each jurisdiction provides different substantive rules, and the differences have a significant possible effect on the outcome of the trial[.]" *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 398 (S.D.N.Y. 2018) (cleaned up).

Whether or not New York law conflicts with any other state's law that might apply, New York law governs the interpretation and enforceability of the Guarantee, both because the parties' submissions assume that it does and because choice-of-law clauses in the Guarantee and Note select New York law. *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law . . . ." (internal quotation marks omitted)); *Ministers & Missionaries Benefit Bd. v. Snow*, 45 N.E.3d 917, 919 (N.Y. 2015) ("[C]ourts will generally enforce choice-of-law clauses . . . ."); *accord Petroleos de Venez. S.A. v. MUFG Union Bank, N.A.*, 51 F.4th 456, 470-71 (2d Cir. 2022). In particular, the common law of New York, not the New York Uniform Commercial Code, applies to the Guarantee. UCC Article 3 "applies to commercial paper, negotiable instruments, not to a guarantee." *Globe Trade Cap., LLC v. Hoey*, 158 N.Y.S.3d 132, 136 (2d Dep't 2021) (quoting *Chem. Bank v. PIC Motors Corp.*, 452 N.Y.S.2d 41, 44 (1st Dep't 1981), *aff'd*, 448 N.E.2d 1349 (N.Y. 1983)). Defendants argue to the contrary, relying on one case applying UCC § 3-606 to a guarantee. *Port Distrib. Corp. v. Pflaumer*, 880 F. Supp. 204, 209 (S.D.N.Y. 1995) (construing New York

law). *Pflaumer* is distinguishable, because there the guarantee was "annexed to, and made part of, the promissory note," and therefore "the entire document is to be considered a negotiable instrument." *Id.* Contrary to Defendants' argument, the fact that the Guarantee and the Note at issue here were executed around the same time as part of the same transaction is insufficient to make them the same instrument.

To the extent any conflict might exist between New York law and the law of Pennsylvania, where the Property is located, Pennsylvania law governs questions of title to and conveyances of the Property, including the mortgages. *See James v. Powell*, 225 N.E.2d 741, 745 (N.Y. 1967); *accord Quinio v. Aala*, 603 F. Supp. 3d 50, 52 (E.D.N.Y. 2022); 19A N.Y. Jur. 2d Conflict of Laws §§ 22, 23; 77 N.Y. Jur. 2d Mortgages § 5.

**B.     The Guarantee Has Been Discharged**

Defendants' motion is granted because their obligations as guarantors were discharged by Plaintiff and W-Cat's Release of the First Mortgage. Under New York law, "[a] guaranty is to be construed in the strictest manner," and "if the original note is modified without its consent, a guarantor is relieved of its obligation." *PRG Assocs. Ltd. P'Ship v. Planet Organic Holding Corp.*, 134 N.Y.S.3d 387, 389 (2d Dep't 2020) (quoting *White Rose Food v. Saleh*, 788 N.E.2d 602, 603 (N.Y. 2003)). "This principle . . . applies not to the direct alteration of the guarantee to which the surety is a party, but to 'any alteration of the contract to which his guarantee applies' which indirectly operates to modify the extent of the guarantee." *Midland Steel Warehouse Corp. v. Godinger Silver Art Ltd.*, 714 N.Y.S.2d 466, 468 (1st Dep't 2000).

In general, any modification that increases the guarantor's risk without consent will discharge the guarantor's obligation. *See, e.g.*, *Arlona Ltd. P'ship v. The 8th of Jan. Corp.*, 857 N.Y.S.2d 208, 209 (2d Dep't 2008) (raising tenant's rent would discharge guarantor absent

6

consent); *U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 61 (2004) (construing New York law to provide for discharge of a surety that "has not consented to a change in the" contract that "increase[s] the surety's risk"); *accord Fed. Ins. Co. v. Turner Constr. Co.*, 779 F. Supp. 2d 345, 354 (S.D.N.Y. 2011).  Releasing a mortgage or otherwise impairing the collateral that secured the original note increases the risk that satisfaction will be sought from the guarantor.  *Generale Bank v. Bell Sec., Inc.*, 741 N.Y.S.2d 198, 200 (1st Dep't 2002) ("It is accepted that impairment of collateral subjects a creditor or guarantor to greater liability.").  Such modifications have been held to release guarantors.  *See, e.g., Cent. Fed. Sav. & Loan Ass'n of Nassau Cnty. v. Pergolis*, 570 N.Y.S.2d 170, 172 (2d Dep't 1991); *see also, e.g., United Nat. Foods, Inc. v. Burgess*, 488 F. Supp. 2d 384, 390-91 (S.D.N.Y. 2007); *Nissan Motor Acceptance Corp. v. Five Towns Nissan, LLC*, No. 16 Civ. 7028, 2020 WL 2797234, at *8 (E.D.N.Y. May 29, 2020).  *See generally Exec. Bank of Ft. Lauderdale v. Tighe*, 411 N.Y.S.2d 939, 942 (2d Dep't 1978) (recognizing that this doctrine existed at common law as well as in New York's UCC).

  Here, payment of the Note was assured both by the First Mortgage and by Defendants' Guarantee.  The First Mortgage was subsequently released, without Defendants' consent, leaving only the Guarantee to assure payment of the Note.  The Court can take judicial notice of the Release of the First Mortgage for its "legal effect."  *See, e.g.*, *Rodriguez v. City of New York*, No. 18 Civ. 4805, 2021 WL 5360120, at *2-6 & n.3 (S.D.N.Y. Nov. 16, 2021) (taking judicial notice of settlement documents, including a release, that were publicly filed, and granting motion to dismiss complaint on the grounds that release barred claims) (citing *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)).  The legal effect under Pennsylvania law is that "the recording of a mortgage release is tantamount to a 'reconveyance' of property"

7

which "reconveys the property to the mortgagor." *Pines v. Farrell*, 848 A.2d 94, 102-03 (Pa. 2004). Thus, the Court can take judicial notice that Plaintiff and W-Cat modified the underlying obligation.

Defendants did not consent to that modification. The Guarantee contains no language consenting in advance to modifications of the underlying Note. The Release itself states that it resulted from an agreement between Plaintiff and W-Cat, and does not mention any agreement by Defendants. The Court also takes judicial notice of the fact that Plaintiff executed and recorded the Release while this litigation was ongoing, after Defendants had moved for judgment on the pleadings once on the basis of a similar instrument releasing mortgage obligations (the Satisfaction Piece), when it was clear Defendants had not consented to being responsible for W-Cat's unsecured debt. *See O'Callaghan v. City of New York*, No. 16 Civ. 1139, 2016 WL 7177509, at *4 (S.D.N.Y. Dec. 8, 2016) ("Accordingly, in considering Defendant's motion, the Court takes judicial notice of public documents filed in connection with the state court proceedings and the Civil Docket Sheet filed in this federal matter, not for the truth of the matters asserted but rather to establish the fact of such litigation and related filings." (cleaned up)). *See generally Pines*, 848 A.2d at 101-02 (discussing satisfaction pieces and mortgage releases).

Plaintiff does not dispute that Defendants did not consent to that modification. Plaintiff suggests that perhaps Defendants' consent was not required because the Guarantee did not specifically require consent. *Cf. Depositors Trust Co. v. Hudson Gen. Corp.*, 485 F. Supp. 1355, 1360-61 (E.D.N.Y. 1980) (finding that guarantor was released by unconsented-to modification where guarantee specifically required guarantor's consent). As discussed above, this gets the default rule backward -- a guarantor's consent is required as a matter of law to avoid releasing

8

the guarantor, whether or not the guarantee says so. *See PRG Assocs.*, 134 N.Y.S.3d at 389 (2d Dep't 2020). While many guarantees specifically provide consent in advance to modifications, there is no such blanket consent clause in the Guarantee here. *Cf., e.g.*, *CCO Condo Portfolio (AZ) Junior Mezzanine, LLC v. Feldman*, No. 21 Civ. 2508, 2022 WL 3867910, at *1 (S.D.N.Y. Aug. 30, 2022); *Coop. Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 36 N.E.3d 80, 82 (N.Y. 2015). The Guarantee contains a clause providing that modifications *to the Guarantee* will not discharge Defendants' obligations without the lender's written agreement, but the Guarantee "is a separate, independent contract between the guarantor and the creditor-obligee and is collateral to the contractual obligation between the creditor-obligee and the principal-obligor." *Ford Motor Credit Co. LLC v. Orton-Bruce*, No. 14 Civ. 5382, 2017 WL 1093906, at *4 (S.D.N.Y. Mar. 22, 2017) (quoting *Fehr Bros., Inc. v. Scheinman*, 509 N.Y.S.2d 304, 305-06 (1st Dep't 1986)); *cf., e.g.*, *Midland Steel*, 714 N.Y.S.2d at 468 (noting that the doctrine at issue applies only to modifications of underlying contracts, not guarantees).

Because Defendants did not consent, Defendants' Guarantee is discharged. Other facts described in documents of which the Court takes judicial notice provide background on this dispute, but this Opinion relies solely on the Release of the First Mortgage and Defendants' lack of consent to hold that Plaintiff's guarantee obligation is discharged.

Contrary to Plaintiff's argument, even assuming that Defendants' defense sounds in equity, that fact alone does not require further factual development where the pleadings -- including matters of which the Court can take judicial notice -- establish that the underlying contract was modified and the Guarantee discharged. The only circumstance that the cases above mention under which modification of a contract would *not* discharge the guarantor under New York law is where the guarantor consented to the modification -- either in the original

9

guarantee or at the time of the modification. *See, e.g.*, *Pergolis*, 570 N.Y.S.2d at 172-73; *Burgess*, 488 F. Sup. 2d at 391-92. As discussed above, the Complaint and documents that may be considered on this motion show that Defendants did not consent.

Even assuming Defendants' discharge defense could be vitiated not only by consent but by general equitable doctrines such as unclean hands, Plaintiff does not suggest any possible facts that could be developed in discovery that would bar the discharge defense here. Where facts establishing an affirmative defense appear on the face of the Complaint and matters of which the Court can take judicial notice, the mere possibility that some equitable exception might exist is not sufficient to survive dismissal. *See, e.g.*, *Naghibolhosseini v. Haralick*, No. 19 Civ. 5348, 2020 WL 5701824, at *3 (S.D.N.Y. Sept. 24, 2020) (dismissing claims on non-exhaustion grounds, despite the abstract possibility of equitable exceptions); *Fashaw v. New York*, No. 21 Civ. 2336, 2021 WL 1999732, at *6 (S.D.N.Y. May 17, 2021) ("Plaintiff does not allege any facts suggesting that the limitations period should be tolled in this case. Because the [statute of limitations] is an affirmative defense, however, a plaintiff generally is not required to plead that the case is timely filed. Dismissal is, nonetheless, appropriate where the existence of an affirmative defense . . . is plain from the face of the pleading." (citations omitted)).

Plaintiff suggests that Defendants may have improperly received the proceeds of the Note, such that "discharge would unjustly enrich" Defendants. But if Defendants have received any proceeds of the Note from W-Cat, they would not have done so pursuant to the Note or the Guarantee. Neither document mentions any funds flowing to Defendants. If Defendants received such proceeds "improperly," W-Cat or another party may have various causes of action to recover those proceeds, but those claims would have nothing to do with the Note or the Guarantee, and would not be prejudiced by the discharge of the Guarantee.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED. Because the guarantee that Plaintiff seeks to enforce has been discharged, any amendment would be futile, and the Complaint is dismissed with prejudice.

The Clerk of Court is respectfully directed to close the motion at Docket Number 44, enter judgment for Defendants and close the case.

Dated: February 17, 2023
      New York, New York

                                            LORNA G. SCHOFIELD
                                       UNITED STATES DISTRICT JUDGE